[Cite as *St. Marys v. Internal. Assn. of Firefighters Local 3633*, 2014-Ohio-2575.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

CITY OF ST. MARYS,

      PETITIONER-APPELLEE,                         CASE NO. 2-13-29

      v.

INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS (IAFF) DBA
ST. MARYS PROFESSIONAL              O P I N I O N
FIREFIGHTERS IAFF LOCAL 3633,

      RESPONDENT-APPELLANT.

---

**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2013-CV-188**

**Judgment Affirmed**

**Date of Decision:   June 16, 2014**

---

APPEARANCES:

    *Henry A. Arnett* **for Appellant**

    *Eugene P. Nevada and Kraig E. Noble* **for Appellee**

**SHAW, J.**

{¶1} Respondent-appellant International Association of Firefighters Local 3633 ("Local 3633" or "the Union") appeals the October 31, 2013 judgment of the Auglaize County Common Pleas Court granting petitioner-appellee City of St. Marys' ("the City") petition to vacate arbitration award under R.C. 2711.10. On appeal Local 3633 contends that the trial court improperly vacated the arbitrator's award. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Chris Wilson, hereinafter referred to as "Grievant," began his employment with the City as an auxiliary Firefighter, then became a full-time Firefighter-EMT basic in July 2002, and later moved up to Firefighter-Paramedic. Grievant remained working for the City in this capacity until he was disability separated in July of 2012.

{¶3} Grievant has had asthma since he was eleven years old, which was known at the time he was hired by the City. When he was hired, Grievant passed a physical examination wherein it was noted that he was physically capable of performing the job without limitation. Over the course of his employment with the City, Grievant acknowledged that he experienced shortness of breath on two occasions while responding to emergency calls.

{¶4} Throughout the course of Grievant's employment, the City's fire department conducted regular training exercises. On March 28, 2012, the fire

department held "search and rescue training." Grievant was unable to complete this training. According to the Grievant's testimony, he had some difficulty and ran out of air in his tank.

{¶5} On April 3, 2012, the City's fire department held agility and performance training. Grievant was again unable to complete this training. According to the Grievant, he was sick at the time of this training, still coughing and using air at a faster than normal rate.

{¶6} April 6, 2012 was Grievant's next "duty day." When he reported to work, he was summoned to a meeting with City personnel to discuss his inability to complete the recent training exercises. During the meeting, Grievant informed the City's personnel that he was ill and had been during the recent training exercises. The Grievant was asked whether he could perform firefighting duties that day if called out and he responded that he did not know if he could. As a result, the City placed Grievant on sick leave and informed him that he would need a statement from his doctor, Dr. Gutta, that he could return to work before he could return from sick leave. The City also provided Grievant with a list of eight questions related to Grievant's ability to perform the duties of his job and asked Dr. Gutta to answer those questions when releasing Grievant to return to work.

{¶7} Dr. Gutta subsequently provided a physician's statement indicating that Grievant could return to work with no restrictions; however, Dr. Gutta did not

answer any of the eight questions provided by the City. Since Dr. Gutta did not answer the City's questions regarding Grievant's fitness for duty, the City did not permit Grievant to return to work. Grievant was instead moved from sick leave to administrative leave.

**{¶8}** The City then contacted Dr. David Randolph for the purposes of evaluating Grievant's ability to perform his job duties. Dr. Randolph provided the City with his report, indicating that Grievant could not safely perform the essential functions of his job. Subsequently, on May 21, 2012, the City notified Grievant of a pre-separation hearing.

**{¶9}** On May 29, 2012, Grievant requested a third medical opinion regarding his fitness for duty status. Grievant had the right to request a third opinion pursuant to Section 27.8 of the collective bargaining agreement, which reads

> **Section 27.8   In the event an employee has demonstrated an inability to perform required duties satisfactorily or has used sick leave in an excessive manner, or when determining an employee's mental or physical ability to perform work for and represent the Employer, medical evidence presented by the employee may be relied upon or, in its discretion, the Employer may require the employee to submit to an examination conducted by a physician who is selected and paid by the Employer.** *If the employee does not agree with the opinion of the physician selected by the Employer, the employee may request to be examined by a third physician whose selection shall be mutually agreed upon by the employee's physician and the physician selected by the Employer.   The opinion of the third mutually agreed upon physician shall be binding upon the Employer and the*

> *employee and such third physician's fees and charges shall be shared equally by the parties.* **An employee determined to be unable to perform the essential functions of the employee's position, may be removed after being given the opportunity for a disability separation hearing.**

(Emphasis added.)

**{¶10}** The City informed Grievant that pursuant to the collective bargaining agreement Dr. Gutta and Dr. Randolph were to select the third physician. Pat Hire, the Human Resources Labor Relations Consultant for the City contacted Dr. Randolph about selecting a third physician. Dr. Randolph provided the names of three physicians who he was comfortable with to conduct the evaluation of Grievant. Hire then contacted Dr. Gutta on behalf of the city. According to Hire, Dr. Gutta was given the names provided by Dr. Randolph. Dr. Gutta stated that whoever the City selected was fine, so Hire utilized Dr. Vogelstein, one of the three listed doctors by Dr. Randolph to conduct the third evaluation of Grievant.

**{¶11}** Grievant was then extensively examined by Dr. Vogelstein, who wrote his final report on July 11, 2012.

**{¶12}** On July 24, 2012, after receiving Dr. Vogelstein's report, Grievant was notified of a pre-separation hearing to be held on July 25, 2012. At that hearing, Grievant testified that he was not ill, was able to perform the essential functions of his job, could have worked and performed his duties and that he had lost over 50 pounds.

{¶13} Following the hearing, Jason Little, the City's Director of Public Service and Safety, made the decision to separate Grievant and issued a separation notice, which was effective July 25, 2012. The separation notice stated that Grievant was being "disability separated from employment with the City of St. Marys pursuant to Section 27.8 of the labor agreement." The decision stated that Grievant could not fully perform the essential functions of the position of Firefighter/Paramedic "[b]ased on the evidence in the case file, the report submitted by Dr. Randolph, and the report submitted by Dr. Vogelstein[.]" (Doc. 7, Ex. 27).

{¶14} Grievant filed a grievance regarding the disability separation on August 13, 2012. The matter then went through arbitration. Two separate hearing were held, the first regarding the arbitrability of the claims, the second regarding the actual merits.

{¶15} The arbitrator's decision was filed June 24, 2013. The arbitrator's award stated, in relevant part:

> **Section 27.8 provides for disability separation when an employee is determined to be unable to perform the essential functions of the employee's position. When a dispute arises, the opinion of the third physician is determinative. Dr. Vogelstein's opinion does not clearly indicate that the Grievant cannot perform the essential functions of the position. Therefore, separating the Grievant on the basis of disability based on Dr. Vogelstein's report violated Section 27.8.**
>
> * * *

**The grievance is granted.**

(Doc. 7).

{¶16} On August 30, 2013, the City filed a "Petition for Order Vacating Arbitration Award Under R.C. 2711.10." (Doc. 1). That same day the trial court set a briefing schedule and set the matter for a non-oral hearing on October 31, 2013.

{¶17} On September 18, 2013, Local 3633 filed its answer and counterclaim . (Doc. 18).

{¶18} On September 30, 2013, the City filed its answer to the counterclaim. (Doc. 24).

{¶19} On October 1, 2013, the City filed its brief in support of its petition. (Doc. 25). On October 15, 2013, the Union filed its brief in support of its counterclaim. (Doc. 29). On October 30, 2013, the City filed its brief in opposition to the City's Petition. (Doc. 30).

{¶20} On October 31, 2013, the trial court filed its judgment entry on the matter. The trial court's judgment entry reads, in pertinent part,

> **When read in their entirety the binding report of the third doctor, Dr. Vogelstein, and the arbitrator's award, the award of the arbitrator departs from the essence of the collective bargaining agreement herein, as the award conflicts with the express terms of the agreement that requires the third doctor's report to control the decision. Dr. Vogelstein's report \* \* \* includes findings "Mr. Wilson does suffer from a disability as**

> **defined by the ADA. There is not, however, in my medical opinion an applicable accommodation that would still permit him to fully perform his duties as a Firefighter/Paramedic," that Mr. Wilson's condition is of a permanent and recurring nature, with documented recurrences, and that it "is medically probable that recurrences of this type will prevent or limit his ability to perform the essential duties of a Firefighter/Paramedic."**
>
> **Accordingly, the Petition seeking an order to VACATE the Arbitrator's Award of June 24, 2013, is hereby GRANTED, and the Court does hereby VACATE said Award.**

(Doc. 34).

**{¶21}** The trial court thus granted the City's petition to vacate the award. (*Id.*) It is from this judgment that Local 3633 appeals, asserting the following assignments of error for our review.

**LOCAL 3633'S FIRST ASSIGNMENT OF ERROR**
**THE COURT OF COMMON PLEAS ERRED WHEN IT VACATED THE ARBITRATOR'S AWARD.**

**LOCAL 3633'S SECOND ASSIGNMENT OF ERROR**
**THE COURT OF COMMON PLEAS ERRED WHEN IT FAILED TO CONFIRM THE ARBITRATION AWARD.**

**{¶22}** In the event that we choose to reverse on either (or both) of Local 3633's assignments of error, the City asserts a cross-assignment of error.

**THE CITY'S CROSS-ASSIGNMENT OF ERROR**
**THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO HOLD THAT THE REINSTATEMENT OF THE UNFIT FIREFIGHTER WOULD VIOLATE 'PUBLIC POLICY.'**

**{¶23}** As Local 3633's assignments of error are interrelated, we elect to address them together.

-8-

*Local 3633's First and Second Assignments of Error*

**{¶24}** In Local 3633's first and second assignments of error, Local 3633 contends that the trial court erred in vacating the arbitrator's award and failing to confirm the arbitration award. Specifically, Local 3633 contends that an arbitrator's award is "presumed valid" so long as the arbitrator's award drew its essence from the collective bargaining agreement. Local 3633 argues that there was a rational nexus here and that the trial court improperly substituted its judgment and interpretation of the physician's report for the arbitrator's.

**{¶25}** At the outset, we recognize that Ohio law favors and encourages arbitration. *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.,* 22 Ohio St.3d 80, 84 (1986). "Consequently, arbitration awards are generally presumed valid*." Univ. of Toledo v. Am. Assn. of Univ. Professors*, 6th Dist. Lucas No. L-12-1317, 2013-Ohio-2811, ¶10 citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.,* 49 Ohio St.3d 129, 131 (1990). Absent any evidence of material mistake or extensive impropriety, an appellate court cannot extend its review to the substantive merits of the award but is limited to a review of the trial court's order. *Piqua v. Fraternal Order of Police*, 2d Dist. Miami No. 09-CA-19, 2009-Ohio-6591, ¶ 17; *Community Mem. Hosp. v. Mattar,* 6th Dist. Lucas No. L-05-1049, 2006–Ohio–25, ¶ 16.

{¶26} Revised Code 2711.10 limits the trial court's review of an arbitration award. It reads,

> **In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:**[1]
>
> **(A) The award was procured by corruption, fraud, or undue means.**
>
> **(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.**
>
> **(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.**
>
> **(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.**

{¶27} The fourth (and final) paragraph of R.C. 2711.10, "authorizes the court of common pleas to vacate an arbitration award upon a finding that the arbitrator exceeded the powers conferred on [him] by the arbitration agreement." *Dayton v. Fraternal Order of Police,* 2d Dist. Montgomery No. 20863, 2006-Ohio-1129, ¶ 8. The essential function of paragraph (D) is to ensure that the

---

[1] Revised Code 2711.10 has been interpreted as containing the *only* reasons a trial court may vacate an arbitrator's award. "In accordance with the policy favoring private settlement of grievances, a trial court may only vacate an arbitration award as prescribed by R.C. 2711.10." *Short v. Resource Title Agency, Inc.*, 8th Dist. Cuyahoga No. 100006, 2014-Ohio-830, ¶ 13.

parties get what they bargained for by keeping the arbitrator within the bounds of the authority they gave him. *Piqua*, *supra*, at ¶ 21.

{¶28} Like arbitral review generally, a trial court's inquiry into whether an arbitrator exceeded his powers under the parties' agreement is limited. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129 (1990), paragraph one of the syllabus. Paragraph (D) is not violated if "the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious." *Id.* at paragraph two of the syllabus; *see also Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Educ. Ass'n.*, 22 Ohio St.3d 80, 84 (1986). Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers. *See Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 273 (1998).

{¶29} An arbitrator's award draws its essence from an agreement when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement. *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME, AFL–CIO*, 59 Ohio St.3d 177 (1991), syllabus. We review

the trial court's decision to affirm or vacate an arbitrator's award *de novo*.  *Piqua*, *supra*, at ¶ 15.

{¶30} In this case the arbitrator's decision reviewed the facts and procedural history regarding the Grievant and the arbitrator came to the conclusion that the opinion of Dr. Vogelstein did not unequivocally establish that Grievant could not do his job.  It is this conclusion which formed the basis of the trial court's finding that the arbitrator's decision departed from the "essence" of the collective bargaining agreement "as the award conflicts with the express terms of the agreement that requires the third doctor's report to control the decision."

{¶31} Upon our own review it is clear that Dr. Vogelstein's report raises a number of issues regarding Grievant's ability to perform the essential functions of his position.  First, Dr. Vogelstein clearly indicates that there would be times Grievant would be unable to perform his job.

> **The majority of the time, [Grievant] is capable of performing all of the duties required of him as a Firefighter/Paramedic.  There are, however, times when this is not the case.  [Grievant] describes and his medical records reflect that when he does develop even a mild upper respiratory infection or when he is impacted by seasonal allergies, this can lead to a flare-up of his underlying asthma, which is usually stable and well controlled.  The main issue in this case is that at such times, he can experience a compromise of his pulmonary function status, which can lead to shortness of breath with even moderate amounts of exertion.  *At these times, [Grievant] is not capable of performing all of the essential functions of a Firefighter/Paramedic.***

Case No. 2-13-29

(Emphasis added.) (Doc. 7, Ex. 25).

{¶32} Second, Dr. Vogelstein indicated that Grievant's condition is permanent, will recur, and that these recurrences would limit Grievant's ability to do his job.

> **It is my medical opinion that [Grievant]'s condition** *is of a permanent and recurring nature*. **Again, his asthma is mild and well controlled, but under certain circumstances, the patient does become symptomatic to the point that his pulmonary status does impact his functional abilities.** *It is medically probable that this is a permanent condition.* **\* \* \***
>
> *It is medically probable that recurrences of this type will prevent or limit his ability to perform the essential duties of a Firefighter/Paramedic.*

(Emphasis added.) (*Id.*)[2]

{¶33} Third, Dr. Vogelstein stated that Grievant's condition constitutes a disability for which no suitable accommodation could be made.

> **[Grievant] does suffer from a disability as defined by the ADA. There is not, however, in my medical opinion, an applicable accommodation that would still permit him to fully perform his duties as a Firefighter/Paramedic. Such an accommodation would essentially entail that he intermittently limit his activity levels and also at such times limit his use of a respirator.**

(*Id.*) Perhaps the most troubling aspect of Dr. Vogelstein's statement that Grievant suffered from a disability was Dr. Vogelstein's subsequent finding that

---

[2] In further indicating Grievant's condition was permanent, Dr. Vogelstein stated, "It is my medical opinion that [Grievant] is at maximum medical improvement." (*Id.*)

Grievant's "limitations" due to his disability would be unpredictable and would be most likely to develop during emergency situations.

> **When and where [Grievant's] functional limitations would arise is an unknown entity, but it is most probable that they would develop at times of extreme exertion, when [Grievant] is already involved in an emergency situation. In this type of situation, there would be no applicable accommodation that would still permit him to fully and safely perform all of the essential functions of a Firefighter/Paramedic.**

(*Id.*)

{¶34} Finally, Dr. Vogelstein opined that Grievant's permanent, unpredictable disability posed a risk to his safety *and* the safety of others.

> **Turnout gear and SCBA weighs 50 pounds and [Grievant] may be required to carry additional equipment weighing up to 52 pounds. Under certain circumstance [sic] as described above, [Grievant]'s physical condition could pose a risk to his safety and the safety of others. In my opinion this would be a rare occurrence, *but based upon the extreme level of exertion demanded by Mr. Wilson's occupation, in conjunction with his underlying medical factors, it is my medical opinion that there is a true risk of his current physical condition resulting in a threat to the safety of himself and those around him*.**

(Emphasis added.) (*Id.*)

{¶35} The doctor's findings can thus be summarized that Grievant suffers from an intermittent but permanent disability that will recur, and will not get any better over time. This disability will, at those times, prevent Grievant from being able to perform his job. When and where Grievant's limitations will arise cannot be predicted, but "it is most probable" that the limitations will "develop at times of

-14-

extreme exertion * * * when [Grievant] is already involved in an emergency situation." (*Id*.) In sum, the parties are in agreement that firefighting is a unique "safety-sensitive" position, and Dr. Vogesltein's findings thus provide a clear indication that the ongoing employment of Grievant jeopardizes the health and safety of both the public and other firefighters.

**{¶36}** Despite the foregoing specific and significant medical opinions set forth in Dr. Vogelstein's report, the arbitrator concluded that: 1) "Dr. Vogelstein did not clearly and unequivocally opine that the Grievant could not perform the essential functions of the Firefighter/Paramedic position," and 2) that "[t]o separate the Grievant from employment, a clearer and more unequivocal opinion is necessary." These conclusions of the arbitrator are simply not consistent with the findings of Dr. Vogelstein. As such, the arbitrator's conclusions directly depart from the essence of the CBA by 1) failing to give binding effect to the report of Dr. Vogelstein pursuant to the express terms of Section 27.8 of the CBA, and 2) by disregarding the provisions of Section 27.8 of the CBA stating that "[a]n employee determined to be unable to perform the essential functions of the employee's position, may be removed after being given the opportunity for a disability separation hearing." Moreover, permitting employment under the specific circumstances set forth in Dr. Vogelstein's report departs from the

"essence" of the parties' agreement, which is to ensure firefighters are fit for duty in order to protect the public and other firefighters.

{¶37} For all of the foregoing reasons, we find that the arbitrator's decision does not "draw its essence" from the parties' collective bargaining agreement. *See Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Educ. Ass'n.*, 22 Ohio St.3d 80, 84 (1986). Accordingly, Local 3633's first and second assignments of error are overruled.

{¶38} As we have not sustained either of Local 3633's assignments of error, we need not address the City's cross-assignment of error to prevent reversal, which is now moot.

{¶39} For the foregoing reasons Local 3633's assignments of error are overruled and the October 31, 2013 judgment of the Auglaize County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**