[Cite as *Northwest State Community College v. Northwest State Community College Edn. Assn. OEA/NEA*, 2016-Ohio-8393.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

NORTHWEST STATE
COMMUNITY COLLEGE,

      PLAINTIFF-APPELLANT,               CASE NO.  7-16-11

      v.

NORTHWEST STATE
COMMUNITY COLLEGE EDUCATION      O P I N I O N
ASSOCIATION, OEA/NEA,

      DEFENDANT-APPELLEE.

Appeal from Henry County Common Pleas Court
Trial Court No. 15-CV-0081

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   December 27, 2016

APPEARANCES:

      *Rory P. Callahan* for Appellant

      *Donato S. Iorio and Edward J. Stechschulte* for Appellee

**SHAW, P.J.**

**{¶1}** Plaintiff-appellant, Northwest State Community College ("the College"), brings this appeal from the November 6, 2015, judgment of the Henry County Common Pleas Court confirming an arbitrator's award to defendant-appellee Northwest State Community College Education Association OEA/NEA ("the Union"). The College also appeals the July 14, 2016, judgment of the Henry County Common Pleas Court awarding attorney's fees to the Union based on the College's breach of the parties' Collective Bargaining Agreement ("CBA").

## I.     Relevant Facts and Procedural History

### a. *Introduction*

**{¶2}** The parties in this case, the College and the Union, entered into a CBA titled "School Support Personnel Agreement," which was effective from July 1, 2011, through June 30, 2015.

**{¶3}** On July 31, 2014, the Union filed a grievance pursuant to the CBA, claiming that the College violated the CBA by unilaterally eliminating the position of Associate Director of Financial Aid, a union position, and transferring the duties of that position to the newly created position of "Assistant Director of Financial Aid," a non-union position. Per the CBA, the matter proceeded to arbitration on February 10, 2015.

b. *The Arbitration Hearing*

**{¶4}** At the arbitration hearing, four witnesses provided testimony to the arbitrator.[1] Amber Yokum testified that beginning in 2010 she worked as the Associate Director of Financial Aid for the College. Yokum testified that the Associate Director of Financial Aid position was a union position.[2]

**{¶5}** Yokum testified that in December of 2013, she was promoted from her position as Associate Director of Financial Aid to Interim Director of Financial Aid. Yokum testified that a person then filled her old position as Associate Director of Financial Aid on an interim basis. Yokum testified that the person filling her old job on an interim basis left the College five or six months later, and the position of Associate Director of Financial Aid thereafter went unfilled.

**{¶6}** Yokum testified that in her new position she worked with Kathryn Soards to create the position of Assistant Director of Financial Aid at the College, which caused the primary issue between the parties.

---

[1] We will provide a brief summary of the pertinent testimony of the witnesses; however, the witness testimony will be provided slightly out of order for ease of understanding.

[2] Yokum indicated that as her duties expanded in the Associate Director position, she questioned whether the position should have been in the union and covered by the CBA. The CBA was said to include Secretaries, Assistant Librarians, Custodians, Switchboard Operators, Receptionists, Computer Programmers/Lab Assistants, Network Technicians, Network Administrators, Computer Programmers and all other School Support Personnel; however, the CBA excluded professional, managerial and supervisory employees. Yokum felt that over time her position acquired more supervisory and managerial duties. While Yokum brought her questions regarding the position's classification to the attention of various people, including her union representative, it is undisputed that nothing was ever done under the CBA by either party to alter, or attempt to alter, the classification of the Associate Director position and remove it as a union position.

{¶7} Kathryn Soards, the Chief Fiscal and Administrative Officer at the College, testified that she was involved with the creation of both the original Associate Director of Financial Aid position, which was being effectively eliminated by the new position, and the new Assistant Director of Financial Aid position. Soards affirmatively testified that the original Associate Director of Financial Aid position was a bargaining-unit position covered by the CBA.[3]

{¶8} Soards testified that after Yokum was promoted from Associate Director of Financial Aid to Interim Director of Financial Aid, the College created the position of Assistant Director of Financial Aid.[4] Soards testified that with the creation of the Assistant Director of Financial Aid position the Associate Director position had "probably * * * been eliminated now because we don't have any intentions of filling that position." (Tr. at 40).

{¶9} Soards specifically testified and admitted that a portion of the work done by the new Assistant Director position was "bargained for work." (Tr. at 47). However, Soards testified that at one point the Union indicated it was fine with the

---

[3] The duties for the Associate Director of Financial Aid were enumerated in a job posting, which was included in the record. There were eighteen enumerated "essential duties and responsibilities," which included, *inter alia*, "Responsible for understanding and complying with federal, state and institutional regulations and policies," "Processing of Professional Judgment applications," "Responsible for Transfer Monitoring to award over funding or duplicating funding with other institutions," "Assist in the preparation of FA nights with area high schools," and "Assists with updating financial aid policies and procedures." (Union Ex. 1).

[4] The duties for Assistant Director of Financial Aid were enumerated in a job posting, which was included in the record. There were twelve enumerated duties, including, *inter alia*, "Responsible for overseeing and administering the Federal Student Loan Program including the management of the Federal Student Loan default prevention program by maintaining the default prevention plan and serving as the point of contract [sic] with any outside parties associated with this initiative," and "Assist the Director of Financial Aid in preparing and making presentations at FA nights with area high schools." (Union Ex. 2).

creation of the new position so long as the College reinstated the Associate Director position. (Tr. at 65).

{¶10} Juan Gonzalez also testified at the arbitration hearing. Gonzalez testified that he was hired in the position of Assistant Director of Financial Aid after it was created and that he held that position as of the date of the arbitration hearing. Gonzalez testified that his position was not in the union. During Gonzalez's testimony, the Union had Gonzalez read each of the 18 enumerated duties contained in the job description for the old Associate Director of Financial Aid position. Gonzalez's testimony indicated that he performed 16 of the 18 duties of that old union job. Gonzalez testified that he would likely be performing the remaining two duties of the old union job in the future. (Tr. at 72-77). Thus in Gonzalez's new, non-union position as Assistant Director of Financial Aid, he did all, or almost all, of the work that had been done in the old union position of Associate Director of Financial Aid.

{¶11} Jason Rickenberg, co-president of the Union, testified that it was his understanding that the Associate Director of Financial Aid union position had been unilaterally eliminated and replaced by the College, giving the work to a non-union position. Rickenberg testified that there was a process to change a job's classification in the CBA and it was not used by the College in this case, which is why the Union filed its grievance.

c. *The Arbitrator's Decision*

**{¶12}** At the conclusion of the arbitration hearing, the parties filed closing briefs and the matter was submitted to the arbitrator for a decision. The arbitrator interpreted the CBA, relying in part on the following portions of the CBA he deemed relevant.

## Article XIV: JOB CLASSIFICATIONS

**Classification System**

**Each School Support Employee position will be placed within one of the columns of the classification system.**

1. **There shall be no change in classification unless there is a significant change in the job duties.**

2. **The Job Audit Committee will evaluate requests for change in classification. \* \* \***

3. **A request for a change in classification, based on a significant change in job duties may be initiated by an employee, the administration, or the NSCC Support Staff Negotiations Committee. The Party requesting the change in classification shall complete a Position Description Questionnaire (PDQ). This is used to collect sufficient information about the position, duties, responsibilities, and qualifications in order that an appropriate assignment of a classification and corresponding pay grade can be made by college personnel. \* \* \***

4. **New support staff positions, unless specifically exempted by law, shall be assigned to the bargaining unit if the job descriptions specify duties that are performed by unit members or which by the nature of the duties should reasonably be assigned to the bargaining unit. All new position's job description will be developed by the administration and will be bargained by the administration**

**and the Support Staff Negotiations Committee, along with the wages, hours, terms and conditions of employment.**

**5. Any new classes in the classification system will be bargained by the administration and the Support Staff Negotiations Committee, along with the wages, hours, terms and conditions of employment for said classes.**

### ARTICLE XXIX: SUBCONTRACTING

**A. There shall be no subcontracting, subletting or assignment outside the bargaining unit for a period exceeding a total of sixty (60) days in any twelve (12) month period per classification of work performed or which is capable of being performed by bargaining unit employees, with the exception of positions vacated by employees on leaves of absence per Article I (B)(2) or if paragraph B below applies. No supervisor or non-bargaining unit employee shall at any time perform work performed by, or which could be performed by, employees except in case of emergency and then only for a limited period of time.**

{¶**13**} On April 13, 2015, the arbitrator issued a decision finding in favor of the Union. The arbitrator reviewed all the issues and arguments, and reasoned, in part, as follows.

**By not having previously pursued [the CBA] procedure before unilaterally eliminating the Associate Director position and directing that some or all of the duties of that former bargaining unit position be performed by one or more classified or graded employee(s), the College has violated not only Article XIV, Section 3 but also Article XXIX, Section A, entitled "Bargaining Unit Work." That specific section States: "No supervisor or non-bargaining unit employee shall at any time perform work performed by, or which could be performed by, employees <u>except in case of emergency</u> and then only for a limited time." (emphasis**

**added)[5] Soards did recognize that a portion of the work currently assigned to the Assistant Director position is "bargained for work." (Tr. 47). Also, in direct response to this arbitrator's question "Was there an emergency to create the Assistant Director position?" Soards responded, "No, it probably wasn't an emergency." As a result, the College has acted in contravention of the limitations recognized for reassigning what has been previously recognized by both parties as bargaining unit work to one or more non-bargaining unit employee(s).**

(Doc. No. 1, Ex. A).[6]

{¶14} The arbitrator's decision in favor of the Union ultimately "directed" the College "to complete the requisite Position Description Questionnaire" mentioned in Article XIV, Section 3, and to follow the remainder of the provisions outlined in the CBA. The arbitrator did not determine that a new position could not be created or that a job classification could not be changed; rather, he merely directed the parties to follow CBA procedure.

d. *The College's Appeal to Henry County Common Pleas Court*

{¶15} On July 13, 2015, the College filed an "Application and Motion to Vacate Arbitration Award" in the Henry County Common Pleas Court seeking to vacate the arbitrator's decision pursuant to R.C. 2711.10. (Doc. No. 1). The College argued, *inter alia*, that the arbitrator did not follow the CBA, that the arbitrator

---

[5] This emphasis was added by the Arbitrator, not this Court.
[6] The arbitrator ruled on additional issues in his decision as well, such as the timeliness of the grievance filed; however, that issue is not raised on appeal and will not be discussed further, particularly given the College's counsel's statement at oral argument that the College was no longer pursuing that argument.

improperly ruled against the College, that the arbitrator exceeded his authority, and that the State Employment Relations Board ("SERB") actually had exclusive jurisdiction over the matter.

{¶16} On July 23, 2015, the Union filed a "Cross-Motion/Application to Confirm Arbitration Award."  In addition to seeking to confirm the arbitrator's award, the Union additionally requested an award for its attorney's fees and expenses.

{¶17} Also on July 23, 2015, the Union filed an answer to the College's application to vacate the arbitrator's award.

{¶18} On August 20, 2015, the College filed its answer to the Union's motion to confirm the arbitrator's award.

{¶19} On September 17, 2015, the Union filed a motion for summary judgment seeking to confirm the arbitration award.  The Union argued that there was no basis under R.C. 2711.10 to overturn the arbitrator's award and that the arbitrator's award was grounded in the CBA.

{¶20} On September 17, 2015, the College filed a motion for summary judgment seeking to vacate the arbitrator's award.  The College argued that the matter should not have gone to arbitration in the first place because SERB had exclusive jurisdiction over the matter and that the arbitrator's decision did not draw its essence from the CBA.

{¶21} Both parties filed responsive briefs and reply briefs related to the summary judgment motions.

{¶22} On November 6, 2015, the trial court filed its judgment entry on the matter. (Doc. No. 27). The trial court ultimately ruled in favor of the Union and confirmed the arbitrator's award. The trial court found that SERB did not have exclusive jurisdiction over the matter, citing *E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.*, 70 Ohio St.3d 125, 128, 1994-Ohio-174, wherein the Supreme Court of Ohio stated that SERB had exclusive jurisdiction

> **to resolve charges of unfair labor practices * * * in two general areas: (1) where one of the parties files charges with SERB alleging an unfair labor practice under R.C. 4117.11; or (2) a complaint brought before the court of common pleas alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11, and the trial court therefore dismisses the complaint for lack of subject-matter jurisdiction.**

The trial court determined that such circumstances giving SERB exclusive jurisdiction were not present in this case.

{¶23} The trial court also determined that "the Arbitrator drew the essence of his decision from the [CBA], that it was grounded in applicable law and that the facts existed in the record to preclude it from being arbitrary or capricious." (Doc. No. 27).

{¶24} Finally, the trial court also found that the Union was to be awarded the costs of the litigation, including all reasonable attorney's fees.

{¶25} The College then appealed the trial court's judgment to this Court. On December 16, 2015, this Court dismissed the College's appeal on the basis that the issue of attorney's fees was still outstanding and unresolved and thus any appeal was premature.

{¶26} Following this Court's dismissal, the Union filed a motion for an award of attorney's fees on February 11, 2016. The Union argued that it should be awarded fees based on the College's breach of the CBA, or, in the alternative, for frivolous conduct committed by the College. The Union asserted attorney's fees in the amount of $14,537.50. No affidavits related to the reasonableness and necessity of the fees were included; however, the Union attached one short summary of the amounts billed and the total amount owed outstanding.[7]

{¶27} On June 17, 2016, the College filed a memorandum in opposition to the Union's request for fees. The College argued that a fee award for breach of contract was not proper at all in this instance as there was a statutory agreement not a "common law contract," and that there was no frivolous conduct here. The College also argued that the fees allegedly incurred were excessive, and that the amount of hours allegedly worked was not reasonable. On June 28, 2016, the Union filed a reply.

---

[7] In a footnote, the Union noted that the hourly rate billed was $125 per hour. The Union contended that the prevailing market rate in the region was $225 per hour, though it provided no evidence to support that figure. The Union asserted that it spent 116.3 hours on this case at a rate of $125 per hour for a total fee alleged at $14,537.50.

{¶28} On July 13, 2016, the trial court filed a journal entry indicating that there had been a hearing on June 17, 2016, on the matter of attorney's fees *in the court's chambers*. No transcript, if one was created at all, was provided to this Court of the hearing in the trial court's chambers. There is no indication from the trial court's entry that any witnesses were called, that any evidence was presented, or that any stipulations were entered at that time. (Doc. No. 42).

{¶29} On July 14, 2016, the trial court filed a judgment entry briefly stating the case history then determining that the Union should be awarded attorney's fees for the College's "breach of contract." The trial court found that "attorney fees in the sum of $14,537.50 are reasonable and are owed by [the College] * * * to the [Union]." (Doc. No. 43).

{¶30} It is from this judgment that the College appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED IN FINDING THAT THE ARBITRATOR PROPERLY EXERCISED JURISDICTION OVER A REPRESENTATION MATTER THAT WAS WITHIN THE EXCLUSIVE JURISDICTION OF THE STATE EMPLOYMENT RELATIONS BOARD UNDER OHIO LAW.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES TO THE DEFENDANT-APPELLEE BASED ON A BREACH OF CONTRACT THEORY THAT WAS INAPPLICABLE IN A MOTION TO VACATE AND CONFIRM ARBITRATION.**

*Standard of Reviewing Arbitration Decisions*

**{¶31}** Ohio law favors and encourages arbitration. *St. Marys v. Internal. Assn. of Firefighters Local 3633*, 3d Dist. Auglaize No. 2-13-29, 2014-Ohio-2575, ¶ 25, citing *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.,* 22 Ohio St.3d 80, 84 (1986). "Consequently, arbitration awards are generally presumed valid." *Univ. of Toledo v. Am. Assn. of Univ. Professors,* 6th Dist. Lucas No. L–12–1317, 2013–Ohio–2811, ¶ 10, citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.,* 49 Ohio St.3d 129, 131 (1990).

**{¶32}** Revised Code 2711.10 explicitly limits the trial court's review of an arbitration award to a narrow set of extreme circumstances. It reads,

> **In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:**
>
> **(A) The award was procured by corruption, fraud, or undue means.**
>
> **(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.**
>
> **(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.**
>
> **(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.**

> **If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators.**

{¶33} Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers. *See Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.,* 81 Ohio St.3d 269, 273 (1998). Moreover, revised code 2711.10(D) is not violated if " 'the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious.' " *St. Mary's, supra,* at ¶ 28, quoting *Findlay, supra* at paragraph two of syllabus. An arbitrator's award draws its essence from an agreement when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement. *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME, AFL–CIO,* 59 Ohio St.3d 177 (1991), syllabus. Although there are strict measures in place to review the award of arbitration by the trial court, and great deference is given to the arbitration process, we review the trial court's decision to affirm or vacate an arbitrator's award *de novo. St. Mary's*, *supra*, at ¶ 29.

### First Assignment of Error

{¶34} In the College's first assignment of error, it argues that the trial court erred by finding that the arbitrator properly exercised jurisdiction over this case.

Specifically, the College contends that SERB had exclusive jurisdiction to hear the case. The College also argues that the Union failed to prove that the creation of the "Assistant Director of Financial Aid" position violated the CBA.

**{¶35}** We will deal first with the College's argument that SERB had exclusive jurisdiction over this matter. In support of its argument, the College cites *Franklin Cty. Law Enf't Ass'n v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167 (1991), for the proposition that, "The State Employment Relations Board has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117." Revised Code Chapter 4117 generally covers Public Employee Collective Bargaining.

**{¶36}** In this case, the trial court directly addressed the College's argument that SERB had exclusive jurisdiction over this matter. In its entry, the trial court stated,

> **Regarding the College's position regarding SERB having exclusive jurisdiction the case of *City of East Cleveland v. East Cleveland Firefighters Local 500, IAFF*, (1994) 70 Ohio St.[3d] 125[,] is instructive in defining SERB's exclusive jurisdiction: [It stated SERB has exclusive jurisdiction] (1) "where one of the parties files charges with SERB alleging an unfair labor practice under Revised Code 4117.11; or (2) a complaint brought before the Common Pleas Court alleges conduct that constitutes an unfair labor practice specifically enumerated in Revised Code 4117.11[.]" The facts before this Court would not provide a basis for such a determination. * * ***

**{¶37}** Notably the decision in *East Cleveland Firefighter's Local* was decided after the *Capital City Lodge No. 9* case cited by the College. Like the Supreme Court of Ohio in the (slightly) more recent *East Cleveland Firefighter's Local* decision, the trial court in this case similarly found that the facts here did not warrant SERB having exclusive jurisdiction where unfair labor practices were not asserted. We agree with the trial court.

**{¶38}** The parties here explicitly bargained in the CBA for a procedure to utilize when a job classification was being changed. Although the College attempts to categorize this case as one that is not related to job reclassification, we certainly cannot find that the arbitrator was entirely without authority to find that this case was principally one of a job classification change or of a situation where bargaining unit work was being done by a non-bargaining unit position. The College created a new job out of the bargaining unit that did all, or nearly all, of the work that had been done in the previous bargaining unit position. Thus we cannot find that the trial court erred in finding that SERB did not have exclusive jurisdiction over the matter. This is particularly true given that the College has provided us with no on-point authority that would compel us to do otherwise.

**{¶39}** Turning next to the College's argument that the Union failed to prove that the creation of the "Assistant Director of Financial Aid Position" violated the

CBA, we again agree with the trial court's confirmation of the arbitrator's award.

In analyzing this issue, the trial court held as follows.

> **In the instant case the Association[,] in the context of a grievance[,] challenged whether the College followed the procedure outlined in Article XIV Section 3 of the Collective Bargaining Agreement. The Association never claimed that the change could not occur, but the Collective Bargaining Agreement, Article XIV spelled out the procedure to be followed when a bargaining unit position change was to be considered. It was the Association's position and the finding of the Arbitrator that the College acted unilaterally to change the bargaining unit position.**
>
> **\* \* \***
>
> **The Court would conclude that the Arbitrator drew the essence of his decision from the Collective Bargaining Agreement, that it was grounded in applicable law and that the facts existed in the record to preclude it from being arbitrary or capricious.**

(Doc. No. 27).

{¶40} In this case, evidence from both parties established that the Associate Director of Financial Aid position was a bargaining unit position. It was also undisputed that the Assistant Director of Financial Aid position was *not* in the bargaining unit. The only testimony in the record indicates that the person hired to be the Assistant Director of Financial Aid did essentially *all* of the old work that had been assigned to the Associate Director of Financial Aid. Further, the only testimony in the record indicates that the Associate Director of Financial Aid position will go unfilled and has "probably" been eliminated.

{¶41} Under Article XXIX, Section A, of the CBA, no subcontracting or assignment of bargaining unit work was supposed to be done for a period in excess of 60 days except in the case of emergency. The only testimony indicated that there was no emergency here and that the new job was going to continue to do bargaining unit work indefinitely. Based on the evidence presented, we cannot find that the trial court erred in determining that the arbitrator's award drew its essence from the CBA.

{¶42} Finally, we would note that the College's entire challenge to the arbitrator's decision seems nearly moot given that the CBA's effective date ended June 30, 2015, and presumably all of the jobs the CBA applied to would likely have to be renegotiated. Therefore, the arbitrator's award ordering the parties *to negotiate over the bargaining unit work* is something that already had to take place.

{¶43} Nevertheless, even putting the final point aside as it was neither raised nor briefed by the parties, we do not find the College's arguments well-taken for the reasons previously stated, and the College's first assignment of error is overruled.

*Second Assignment of Error*

{¶44} In the College's second assignment of error, it argues that the trial court erred by awarding attorney's fees to the Union in this case. Specifically, the College argues that the "American Rule" generally has each party bear its own attorney's fees absent an express statutory or contractual provision otherwise, that

the parties did not have a "common law contract," and that the trial court erroneously relied on cases cited by the Union indicating that this was a breach of contract case when those cases were distinguishable.

**{¶45}** In the alternative, the College argues that the fee award was excessive because the Union would have had to file to confirm its own arbitration award anyway, and that similar briefing to the briefing in this case had been done by the Union previously in another case, which should have dramatically reduced the amount of time spent on this case. The College also argues that the issues in this case were relatively straightforward, that they did not require an evidentiary hearing, and thus 116.3 hours of allotted time was excessive.

**{¶46}** We will deal first with the College's alternative argument related to the amount of the fees, as it is dispositive of this assignment of error.

**{¶47}** Generally, "[b]efore awarding attorney fees, a trial court must determine the reasonableness of the time spent on the matter and the reasonableness of the hourly rate." *Hubbard v. Hubbard,* 3d Dist. Defiance No. 4-08-37, 2009-Ohio-2194, ¶ 12, citing *Bagnola v. Bagnola,* 5th Dist. Stark No.2004CA00151, 2004-Ohio-7286. "Courts have recognized that merely submitting an attorney's itemized bill is insufficient to establish the reasonableness of the amount of work billed." *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No.

6-12-06, 2013-Ohio-144, ¶ 24 (citations omitted); *see also Inverness v. Maher*, 3d Dist. Hancock No. 5-15-16, 2015-Ohio-3816, ¶ 72; *Hubbard*, *supra*, at ¶ 12. Evidence must be presented that the hours expended on the case by the attorney were necessary and that the rates are comparable to those in the community for similar services by attorneys of a similar level of skill. *Jack's Heating* at ¶ 20. "Although trial court judges may have experience and knowledge regarding the setting of fees, they 'must base the fee determination upon *evidence adduced* and cannot substitute [their] own knowledge for evidence.' " (Emphasis added.) *Jack's Heating* at ¶ 31, quoting *In re Wood's Estate,* 55 Ohio App.2d 67, 75, 379 N.E.2d 256 (10th Dist.1977).

{¶48} The party requesting attorney's fees carries the burden of proof to show that the request was reasonable. *Jack's Heating* at ¶ 22. Trial courts should not speculate as to whether the hours were necessary or that the fee itself is reasonable. *Id*. at ¶ 28. We review a trial court's decision on whether to award attorney's fees under an abuse of discretion standard. *Jack's Heating* at ¶ 15 citing *Bittner v. Tri–Cty. Toyota, Inc.,* 58 Ohio St.3d 143, 146 (1991). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Jack's Heating* at ¶ 15 citing *State v. Boles,* 2d Dist. No. 23037, 2010–Ohio–278, ¶¶ 17–18, citing *Black's Law Dictionary* 11 (8th Ed.2004).

{¶49} In this case the trial court initially stated in its judgment entry confirming the arbitrator's award that it would award attorney's fees to the Union.[8] Before the trial court had determined the amount, the reasonableness, and the necessity of any fees, the College appealed. This Court dismissed that appeal as premature, due to the issue of attorney's fees still outstanding.

{¶50} Following this Court's dismissal, the Union filed for attorney's fees in the amount of $14,537.50 and the College argued against those fees, making the same arguments it does now on appeal. As far as the record indicates, the trial court did not hold an evidentiary hearing on the record or collect evidence on the matter of attorney's fees before granting the fees in the requested amount.

{¶51} As no evidentiary hearing was held and no evidentiary materials were produced in this case, no actual evidence whatsoever was presented as to the reasonableness of the rate charged. No actual evidence whatsoever was presented as to the necessity of the amount of time spent. No actual evidence whatsoever was presented that the amount of time spent was reasonable. No stipulations were presented by the parties that the rates were reasonable and that the hours expended were reasonable and necessary. We are merely left with contested allegations made by the Union in its motion for fees that its fee-rate was reasonable, and that the amount of work done was reasonable and necessary.

---

[8] The actual original judgment entry indicated fees would be awarded to the College, but that was corrected by a *nunc pro tunc* entry.

**{¶52}** In the Union's motion for fees, there was one exhibit attached that contained a table covering approximately one-quarter of a page adding up the total hours spent, the bill total, and the balance due. There were no affidavits along with this exhibit attesting to the reasonableness and necessity of the work, and there was certainly no other testimony attesting to it either by the attorneys who did the work or another attorney altogether claiming that the time and rate were both reasonable and necessary. This Court has stated that submitting an itemized bill is insufficient to establish attorney's fees, let alone a brief table summary containing no sworn evidentiary statements. *See Jack's Heating*, *supra*, at ¶ 24; *Inverness v. Maher*, *supra*, at ¶ 73.

**{¶53}** In the absence of *any* actual evidence presented as to the reasonableness and necessity of the fees rather than mere allegations, the trial court had to engage in speculation that the fees in this case were reasonable and necessary. While the hourly rate itself might *seem* reasonable, particularly given the comparable rates cited by the Union in its motion to the trial court, no actual evidence was presented confirming those rates and stating that they were actually reasonable.

**{¶54}** In sum, the Union produced absolutely no evidence establishing the reasonableness and necessity of its fees or the hours spent and the College challenged this issue, particularly the amount of hours, both at the trial court level

and to this Court. In order to uphold the trial court's award of fees, this Court would have to improperly speculate that the rate was reasonable and that the amount of hours spent was both reasonable and necessary. Thus we have no choice but to reverse the trial court's award of fees to the Union as the amount is simply not supported by any actual *evidence* in the record. Therefore, the College's second assignment of error is sustained.

{¶55} For the foregoing reasons, the College's first assignment of error is overruled and its second assignment of error is sustained. Therefore, the judgment of the Henry County Common Pleas Court is affirmed in part and reversed in part and this case is remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON and WILLAMOWKSI, J.J., concur.**

**/jlr**